AJC International Incorporated et al. v. Triple-S Propiedad Good morning, Your Honor. My name is Manolo Rodriguez-Baird and I represent the appellant in this case, AJC. I would like to reserve three minutes of my time for rebuttal, if possible. Thank you, Your Honor. This matter is before the Court after the District Court ruled on cross motions for summary judgment regarding coverage under an insurance policy issued by the appellee, Triple-S. The standard of review is the noble review. Since the case was decided on cross motions for summary judgment, this Court has to decide whether either of the parties is entitled to judgment as a matter of law based on the facts that are undisputed on the record. The case may seem somewhat confusing or hard to follow because of the many reference and cross-reference to various sections of the policy. And this Court underwent an analysis of similar clauses, exclusion, endorsement, and coverage provisions in the cases decided recently, the StoreGuard and Statmore, and the Fit Co-op v. Nova cases. But the truth of the matter is that this case really boils down to a question as to what is or is not excluded by an equipment breakdown endorsement or limited by that endorsement that was made part of the policy. The policy that was issued to economy, the assured in this case, that's a local outfit that is a cold storage facility, was an all-risk policy. And as was explained by this Court in the StoreGuard decision, this means in insurance lingo that the policy covers all physical loss or damage to covered property unless it results from an excluded peril. The appellant, AJC, as I indicated, was a customer of economy, and economy had custody of AJC's food products, $700,000 worth of chicken, meat, and seafood. And AJC experienced an equipment breakdown in its facilities, a compressor breakdown, and the products, AJC's products became questionable for human consumption and were eventually destroyed. There can be no doubt that AJC's products were covered under the policy issued by economy as property of others, under the policy in question. And in this regard, the building and personal property coverage form indicates that covered property are those listed in the form for which there is a limit of insurance in the declarations. While personal property of others is specifically mentioned in the list under the building and personal property coverage forms, and the declarations specify a limit amount of $500,000 for that type of property. In fact, the building and personal property coverage forms distinguishes between the property of economy as business personal property from that property in the cost of the current control of economy as being the property of others. Moreover, the building and personal property form indicates that payment for any loss for property of others will be only made to the owner of the property. There is no doubt, therefore, that AJC's property was covered under the old risk policy issued to economy. And in fact, this language that I just mentioned shows also that AJC was a beneficiary under that policy. Council, I know, yeah, there's a lot of back and forth in terms of the policies, but it seems to me, and I guess you'll agree with this, that your argument really hinges almost entirely on the language in the endorsement, the spoilage provision, which throughout talks about, uses the word your, your loss, your loss, your loss, your goods. And on the declarations page, yours means insured. I mean, isn't that really the essence of your argument? That is the essence. Also, there's another error that we point in the brief, but that is one of them, Your Honor, as you mentioned. The word you and your are clearly defined in the policy as referring only to the name insured, and that was economy. AJC was not a name insured under the policy. The district court determined that the terms for the words you and your were also applicable to others. And that is against the rule that, you know, words that are clear in the policy should. I thought the argument was that it's your loss, not your property. The phrase is your loss of property, isn't it? I'm sorry, can you repeat? Isn't the phrase your loss of property? Your loss of perishable goods. Right, so isn't the argument not that your means something other than your, but that your modifies loss. So it is your loss, and then the question is loss of what? Loss of another's property. But the thing, Your Honor, if you look at that section of the endorsement, which is section A2, and you concentrate in that section, it talks about the $25,000 and uses the word you and yours. There's no question, it has been stipulated, it is undisputed that the equipment breakdown endorsement brought back that coverage, and that the declarations show a limit of $500,000, and that's for equipment breakdown of others. So if the endorsement brought back that coverage for that amount, it had to be either under section A1 or section B. Does that depend on who, if you go to the beginning of the policy, when you start off by saying, under the, before you get to the equipment breakdown endorsement, when it says we will pay for direct physical loss of or damage to covered property, the very beginning, A, coverage, right? Yes. I had thought that when they're talking about direct physical loss, they may be excluding from coverage things that are more downstream, like foliage of another person's property that you're holding. So that this policy wouldn't cover that unless you bought additional coverage. Well, Your Honor, the... That's why I thought what was going on in A was that they were purchasing additional coverage to cover downstream losses such as foliage. But the way... What's wrong with thinking about it that way? But the way, Your Honor, this is an old risk policy. Yeah? And the way it works, we submit respectfully, is that physical loss or damage to covered property, which includes both, you know, from economy or from AJC, is covered unless the cost is excluded from the policy. And in the exclusion sections of the policy, equipment breakdown was an exclusion originally, but the equipment breakdown brought back that exclusion. And there's a limit of $500,000 to cover loss of property of others up to a maximum of $500,000. Let's say it was covered in the initial policy, then excluded because of equipment breakdown. Now they buy a new equipment breakdown endorsement to bring it back in. Under the equipment breakdown endorsement, when it says, we will pay for loss caused by resulting from an accident to covered equipment, and then it defines accident means direct physical loss. Does that include foliage? Just that language? Or I thought that excluded downstream losses. No, that includes, and it's defined there, section, parenthesis, small a, mechanical breakdown. Yeah, mechanical breakdown, that would be covered. That would be covered, yeah. But does the downstream effects of a mechanical breakdown, like foliage of another's property, is that covered right by that language? Because if not, you might read the next thing as purchasing additional coverage that would ensure you against foliage, which then might be subject to the $25,000 cap. But the way it reads, Your Honor, direct physical loss caused by or resulting from an equipment breakdown in that sense, and this is a loss that is resulting from a direct physical loss, from equipment breakdown. Is foliage a direct physical loss? I'm sorry? Is foliage a direct physical loss? Is loss goodwill a direct physical loss? There's a lot of downstream consequences from an equipment breakdown, and I'm trying to figure out what falls within the phrase direct physical loss. Does every consequence that's negative to a business of an equipment breakdown constitute direct physical loss? Because if so, why are they purchasing these other coverages? Why have a foliage coverage at all? Well, it's limited only to the insured. This is a cold storage facility that had two main clients, AJC and Colorado Beef, and all they did was store food products. There was a time when economy had its own food products. I understand not much, and I understand that at the time of the loss they didn't have, or that's what's on the record. But it may be some coverage for that. It also, that section, when you read it, talks about expenses related to that. It talks about your expenses to minimize the loss, your expenses to clean the damaged property from hazardous materials. But see, everything in one, all the little subparts of one under equipment breakdown, seem like direct physical losses to you. They don't seem to talk about downstream effects. And everything in two seems potentially, or many of them, seem like downstream effects. It's a loss to the computer equipment, not to the equipment itself. It's a loss to spoliage, not to the equipment itself. It's a loss to the expenses that would follow from it. Whereas everything in one seems like it's a loss to the actual equipment that breaks down. That's what leads me to think maybe direct physical loss in one isn't covering spoliage. It's only two that's an additional coverage to protect you against spoliage. But when you read under that subsection A2, Your Honor, it talks about expediting expenses, and it talks about your expenses to take away hazardous substances from goods. It will pay for unnecessary expenses you incur to reduce the amount of loss. And in this case, it's indicated in the SSS brief that the policy did not cover expenses. It did not cover consequential losses. So everything in this section of the endorsement is geared to the assured. But this is also, wouldn't it be making up for the fact that there was an exclusion of the equipment breakdown entirely? That's why they brought the equipment breakdown endorsement, I thought. Well, the equipment breakdown endorsement, they brought it back to the policy. And as I said in the beginning, the endorsement modifies insurance provided under the following, the building and personal property coverage form and the causes of loss special form. And it took away the exclusion of equipment breakdown. Well, you mean that the end, but that I thought, that depends on, it depends on what you mean. It says all exclusions and limitations apply except, right? And it says the form is modified. So you're reading then, if I understand that argument, the thing that just seems illogical to me or difficult to understand, you have a policy that excludes on the beginning equipment breakdown. Then you have a part of it in which they bargain for coverage to cope with the fact that they excluded equipment breakdown. And then that document which bargains for it includes another provision, which says, wait a second, we didn't exclude equipment breakdown. It just seems, why would you, could you help me understand, who would bargain that way? You're saying it's excluded on one, so to cover the exclusion we have this equipment endorsement. But then you're saying the endorsement contains a separate provision that meant to actually take back the initial exclusion, even though they also bargained for how to deal with the exclusion. Right. And I think, Your Honor, it all goes back to the main policy as well. So, and it's an all risk policy. And, you know, it was, there's nothing to qualify the, you know, the wording in the endorsement when it went back and took away the equipment, the mechanical breakdown exclusion by saying, unless otherwise provided here or limited by this other section. And we have a limit of $500,000 in the declaration for mechanical breakdown. There's a sublimit for spoilage, but it's for a power outage. And that's, you know, it's not an issue here. But it's stated in the declaration there is a sublimit for that. But there's no sublimit or any lower amount mentioned in the declarations for equipment breakdown. And the last paragraph. If I just, I'm just, as you work through this endorsement, it seems to be all about damage to the property of the insured or concerns about the consequences of damage of the property of the insured. It really doesn't, I mean, that's, if there's, if you can talk about an overriding theme in an insurance document, that seems to be the overriding theme of the endorsement. And so to even argue, and I guess, again, you'd probably agree with this, to even argue that this endorsement has anything to do with the losses involving the property of another, is simply to misread the overriding purpose of this endorsement, which seems to have nothing to do, I mean, I can't really find anything in this endorsement that addresses at all the losses involving property of others that are turned over to the insured as part of their business to protect until they're ready to be put into commerce. It just doesn't seem to have anything to do with that. I guess that's basically your position, right? It is my position, Your Honor. And in the meantime, we have a coverage for equipment breakdown for loss or damage to property of others that is out there, and we're trying to reach that limit, Your Honor. And you mentioned at the beginning the words you and your, and there's a case that was decided recently by this court, Metropolitan Property v. McCarthy. It had to do with the duty to defend, interpretation of the duty to defend in an insurance policy. And that case was defined based on the definition of you as it appeared in the policy, and whether the person who made an assault was or was not an insured based on that definition. And we submit that there's a clear definition for the words you and your in the policy, and that's one of our main arguments here. Just on this last point, when it says in the equipment breakdown coverage that the following coverage is also applied to loss caused by resulting from an accident to covered equipment, and then when it talks about spoliage, it talks about the loss of perishable goods. Your position is that in thinking about that, that can only mean the perishable goods of the insured, not the perishable goods that the insured's in the business of storing in its refrigerator? Yes, Your Honor, and if you look for... Why wouldn't you want to be covered? No, no, but in particular in relation to this section A2, although I agree with what the judge said about the entire endorsement, but if you compare that to the schedule they use to cover a power outage, which is an ISO form that is used by SSS, and this is not an ISO form because SSS does not underwrite equipment breakdown. It's the Hartford Steamship Boiler Insurance and Protection Agency. In that section, it describes or identifies the perishable goods as those of yours and those of others. In this policy? In this policy, I believe it's page 167 of the appendix. I see. But they didn't use that spoliage endorsement for the mechanical breakdown because SSS does not insure equipment breakdown, so they don't underwrite that risk. So if I understand, so just then, so your argument depends on us thinking perishable goods does not mean perishable goods of another? Well, in particular, as it refers to this specific subsection A2. Right. Because, you know, in another context... No, in A2, they're talking about the perishable goods of the insured, not of another, even if the insured is holding them for another as part of their business. Right. And then if that's right... No, sorry. If that's right, just so I understand the argument, then we have to think direct physical loss under A of the whole policy when it says we will pay for direct physical loss or damage to covered property at the very beginning of the policy? Yes, and the fact that the... You have to think that includes a consequential loss like spoliage? Yes, Your Honor. Okay, and do you have the authority just on how to interpret that phrase so that direct physical loss there means a consequential loss like spoliage of another's goods? Do I have what, I'm sorry, Your Honor? Any authority, any case that helps us interpret that language for direct physical loss? All I have, Your Honor, is that it's an all-risk policy, so if it's not excluded, it's not excluded. That other endorsement that they, that Triple S uses for... No, I know it's not excluded. I'm just, the phrase direct physical loss is... But what I was going to say, Your Honor, that other endorsement that Triple S uses that they only use for power outage, you know, brings back that coverage, but in the language of that endorsement, they qualify the coverage section, section A1, to say that it's only, you know, within the limits of the endorsement. They could have done that here, and that was not done here, because the endorsement either does not apply or that section, A2, that was the one that was taken, you know, and used a blindfolded approach by the court to determine that it was controlling only that particular section of the endorsement. Counselor, just to follow up on Judge Barron's question, it's a dimension of this that I don't think I sufficiently appreciate. This direct physical loss language says we will pay for direct physical loss of or damage to covered property at the premises, and then we have definitions of covered property, which includes personal property of others that is in the care, custody, or control. Now, that language would apply to the goods of your client, right? Correct. It would apply to that, but then we have these exclusions for damages that are caused by certain types of events, such as a breakdown of mechanical equipment, but I guess in terms of the perishable goods concern, you would say that the spoilage of your goods would be a, would you view that as a direct physical loss of the mechanical breakdown? Yes, Your Honor, and more so in the context of a cold storage facility, because almost with every cash vault they're going to spoil. I mean, that's what other property of others, you know, they have in care, custody, and control. You know, it's food products we're talking about. So if the endorsement sort of restores mechanical breakdown to covered causes, then you would, I guess you would argue that, again, that the spoilage of your perishable is a direct physical loss resulting from that mechanical breakdown? Correct, Your Honor. Would that be your view? Correct, Your Honor. And then so if that, on that logic, then when the endorsement provision comes back in and talks about the additional coverages including spoilage, when it talks about perishable goods there, you say because it doesn't have specific language about personal property of others, we should read perishable goods there to be focused solely on the goods of the insured? In that context and in relation to that limit of $25,000, yes, Your Honor, because we have a limit of $500,000 for physical loss or damage to property of others. So we say that we don't fall within that subsection of the endorsement. Thank you, counsel. Thank you, Your Honor.  Bill Schneider for the defendant, SSSS, appropriate at. Just to kind of pick up on a couple of the questions that Your Honors have asked, I don't think there's any dispute here that there has been a loss in the sense that perishable goods that were present in the cold storage facility operated by economy spoiled as a result of an equipment breakdown. We haven't cited any case law in our memo or our brief, but, you know, we're talking about some change in the physical characteristic of that specific property. So I don't think there's a dispute here that there has been a direct physical loss. What the insurer's position has been, and as the district court found, is that when you have the direct physical loss of perishable goods as the result of spoilage due to mechanical breakdown, that you need to look to this equipment breakdown coverage in the policy as well as the applicable limit. And, you know, under the insurance code here in Puerto Rico, the court's obligated to view the policy in its entirety. And I think that's a very important thing to do because when you start with the policy declarations and you work your way through the contract, what you're going to see is spoilage is treated specifically and distinctly as the result of direct physical loss. By way of example, on page 167 of the record appendix, you have the spoilage endorsement that my brother mentioned in his argument. I thought that going down this road, I thought that the opposing counsel's contention was everything you say so far is true. When you get to the equipment breakdown endorsement and it talks about perishable goods, there's no language in that endorsement that talks about property of others. Well, correct. I mean, what the endorsement says is they're going to pay for loss. It doesn't, you know, unlike the building and personal property coverage form that says we'll pay for direct physical loss or damage to covered property, and then goes on to, you know, delineate certain subsections of covered property, what this endorsement does is add an additional coverage that says we will pay for loss caused by or resulting from an accident to covered equipment. And, you know, what I think it's important for the court to focus on is if this equipment breakdown coverage endorsement didn't exist, wasn't part of the policy, it wouldn't even be here because equipment breakdown is an excluded peril in the coverage form. And as my brother points out and as the case law state, you have an all risk policy. All risks of direct physical loss are covered unless excluded or limited. Well, the limitation for the spoilage of perishable goods appears in this additional coverage. And what AJC has advocated in its first argument and its brief is essentially, well, if you look further into this endorsement, you've got a provision that modifies the causes of loss special form and exclusion. So what they're essentially saying is, well, because you've deleted the exclusion for equipment breakdown, well, then we're just going to focus on the policy without that exclusion as if this endorsement didn't exist. And I think that's. No, they're not. I don't think they're saying that. I mean, they're saying this, in a way, this endorsement is a completely self-contained insurance policy. It starts out with a statement of what's covered. Much in the way in which the basic policy does. But then it has some exclusions and some limitations. And it recites a limitation with respect to spoilage. But they're not. I mean, with this endorsement, I mean, you now have coverage that you didn't have before. And you then look at this to understand what the limits of that coverage are. I don't think they're making the sweeping argument that you're attributing to them. Well, that's how I construed the argument raised in their brief, that you get to that $500,000 limit for the personal property of others because equipment breakdown is not an excluded cause of loss. There's two routes to them getting there. One is the route that you're saying, which is they say that that language about modifying the policy and it's now applying in this way and then mentioning the B-6 is effectively deleting the exclusion. Correct. That's one argument, okay? But the other argument they're making, and the one I think that Lopez was exploring earlier, is, okay, let's say they're wrong about that. And let's look at the equipment breakdown endorsement on its own terms. What is it speaking about? And their argument, and this is their second argument, it's not speaking about anybody else's property other than their own. And so the spoliage coverage is spoliage coverage for themselves, period. Well, correct, Your Honor. Were you finished with your question? Yeah. Okay. As you had pointed out, when you look at the subsection A2C, spoilage, we will pay for your loss of perishable goods due to spoilage. What it doesn't say is we will pay for loss of your perishable goods due to spoilage. Nor does it say your loss of your perishable goods. Yeah, there's no distinction in this coverage form as to who owns the perishable goods that are spoiled. The distinction here is who has the loss. And this is a contract of indemnity, and it's issued by the insurance company to economy to indemnify economy for its covered losses. And in this particular case, economy was indemnified in the amount of $25,000 for the loss of perishable goods, which included perishable goods owned by AJC, in compliance with this endorsement. That's how the insurance company read it. That's how I understand the magistrate and the district court judge read it below. Do we have any case law that helps us figure out how to interpret this, if there's an ambiguity here, how to resolve it? Well, you know, the case law is pretty clear about what you and your mean, as is the policy. In terms of how the court would construe this particular phrase, I'm not aware of any cases in Puerto Rico or elsewhere that, you know, when they say we will pay for your loss of perishable goods, whether or not the your is modifying loss or the your is modifying perishable goods. You know, as I read the provision, I read the word your to modify loss. It's immediately precedent to that word. And thus, where the contract of indemnity serves to protect the interests of economy, it's indemnifying economy for its loss of somebody else's personal property in its care, custody, or control, which is consistent with the coverage grant in the primary building in personal property form, just subject to the limitation in the event that you have spoilage as a result of a mechanical breakdown. Counsel, if this line, if it's just under spoilage, one, we will pay for the loss of perishable goods due to spoilage, there would be nothing for us to talk about, it seems to me. It doesn't matter whose perishable goods they were. If they're perishable goods, the limitations, including that $25,000 limitation, applies. You introduced the use of the word your for some purpose, and the declaration tells us that your means the insured. How else can you read that other than to say we're talking about the loss of the perishable goods of the insured due to spoilage? I don't know how you, excuse me, your reading makes that conscious choice of the word your meaningless. Well, I would respectfully disagree, because if you read this as only providing the limitation for property owned by the insured, you're in essence creating two classes of perishable goods, perishable goods owned by the insured and perishable goods owned by others. If you look at the building in personal property form, for example, it defines covered property to include both the insured's business personal property as well as the personal property of others. It's still covered property. If you're going to read this to say your loss is the equivalent of your perishable goods, then I'd argue that construction is actually creating a distinction that's not found in the terms of the policy. I don't disagree that using a more vanilla word such as the might eliminate the question of whether or not your is modifying loss or your is modifying perishable goods, but as I've construed this, and as I believe the court has construed it below, there's not that distinction because what they're indemnifying for. If you look at A2, maybe we'd have to go through, but it says with respect to your damaged covered property, and of course covered property is defined as property that includes other people's property. So the modifier your certainly can mean your control over something that's not just your own, right, which would be the same kind of construction that occurs here. Can I ask one last piece of this, which is on this point, suppose your opposing counsel is right in that perishable goods means only the goods of the insured and not theirs. They lose unless they're also right that this phrase in B, exclusions, all exclusions and limitations apply except in the causes of loss, is read as taking back the exclusion in its entirety, right? Correct. Their argument then depends on us reading that statement about modifying how this exclusion applies to be best read as deleting the prior exclusion. Correct. If that's right, if this did delete the entire exclusion in its entirety, what sense would there have been about bargaining over A at all? Well, exactly. Even as to the insured's protection, because it wouldn't need it since the exclusion had been completely deleted in its entirety anyway and all of this was covered for the insured to begin with. Correct. If I was an underwriter and I wanted to issue this policy so that it provided all risk coverages to include equipment breakdown, I would have included just a simple endorsement eliminating the exclusion. If your honors look at the decision in the Fidelity Co-op versus Nova Casualty case, specifically footnote two, it talks about the interplay in some of these endorsements. And ultimately, you know, finding coverage under the flood endorsement in that case, the court specifically noted that, and I'm going to quote here, there is nothing in the language of the flood coverage or mandatory endorsement that has preclusive effect over any other claim for damage brought under any other term of the policy, including a claim brought on the basis of water damage resulting from drain overflow. And what I'd submit is, sure, you've got this section here that eliminates the exclusion, but you have to have that. Otherwise, you've got a policy that excludes mechanical or equipment breakdown, and then you've got a specific endorsement that provides that coverage and it creates an internal inconsistency. So you would just read this as truly a statement noting the modification rather than deleting the exclusion in its entirety? Right, right. And if, for example, you look at the specific spoilage endorsement, you'll see that endorsement, you know, it's not as extensive as the equipment breakdown endorsement, but it operates in a similar fashion as to how it, you know, modifies sections of the policy specifically for that particular coverage. It doesn't, you know, for example, delete, you know, it's not going to delete the exclusion for all intents and purposes for all risk coverage because that would necessarily require the court to ignore, you know, the five or six pages of this equipment breakdown endorsement. Anything further, Counselor? No, we'd rest on our brief and ask that the court affirm the judgment below. Thank you. Your Honor, I would like to address what was mentioned by Brother Counselor about not creating two types or classes of perishable goods. They could have clarified this in the endorsement because if you go to the spoilage endorsement for power outage, they do that. They say covered property means perishable goods, it's perishable stock at the described premises owned by you or by others. So throughout the policy they use the words you and they use the words others, and they could have done that here if that was the intention. So the fact that that section of the endorsement refers to you and yours, we reaffirm our position that we understand that that applies to the insured and not to others. Can I ask you the same question I just was going over with Counselor? If you're right on that and the spoilage coverage only covers the insured and not you, your argument depends on us reading that language about the exclusion having been deleted. It depends on it being deleted, right? Right, and the fact that at the very end the endorsement refers to the limits shown in the declarations, which is the amount of $500,000. Can I just ask you, if in fact you're right on that and the exclusion is deleted, why was the insured bargaining for the spoilage coverage? Like I say, they didn't have goods they used to have many years back? No, no, no. If you're right, they bargained for spoilage coverage to protect them against an exclusion that was deleted. Why did they do that? Well, the thing is it's mixed among other provisions geared at the expenses you would have regarding any such loss. And, you know, we're not claiming ambiguity, although there's a lot of discussion as to what your means. But there's an email from the adjuster who initially reviewed this claim from the Harbor Steamship Boiler Insurance Agency. They were the ones who underwrote this risk. And they interpret the policy the same way. They say if the property was property of others, the limit is $500,000. If it's the insurer's property, it's $25,000. And that's on the record. It's been cited. Also, broader counsel mentions that the policy was aimed to identify the insured and that the word you really means, you know. You mean what the insured bargained for was a cap on loss to their own property, but a much higher cap on loss of perishable goods of another? That's what we understand. That may have had some bearing on the amount of the policy or whatever, Your Honor. But he didn't have any commodities there at that time. And he didn't have commodities of his own for a long time.